## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

WORLDWIDE AIRCRAFT SERVICES INC.,
d/b/a JET ICU, a Florida corporation,

      Plaintiff,

v.                              Case No. 8:24-cv-01604-WFJ-CPT

CONNECTICUT GENERAL LIFE INSURANCE
COMPANY, a corporation, a/k/a CIGNA,

      Defendant.
_____/

## <u>ORDER</u>

Before the Court is Connecticut General Life Insurance Company's a/k/a Cigna ("Cigna" or the "Defendant") Motion to Dismiss the Amended Complaint filed by Plaintiff Worldwide Aircraft Services, Inc. d/b/a Jet ICU ("Jet ICU" or the "Plaintiff") pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. 13. As explained below, Defendant's motion to dismiss is granted with prejudice as to Count I but without prejudice as to Count II.

## BACKGROUND

Plaintiff Jet ICU alleges that on or about June 10, 2022, J.K. (hereinafter referred to as "Patient") was an insured beneficiary under a health insurance policy provided by Defendant Cigna. Dkt. 1-1 ¶ 4. On the same day, Plaintiff contends that

Patient suffered a medical malady that required emergency air transportation from St. Thomas, U.S. Virgin Islands to Tampa, Florida. *Id.* ¶¶ 5–7. The treating physician determined immediate air medical transportation was appropriate and necessary for the treatment of Patient's condition. *Id.* ¶ 6.

At the time of the air transportation, Plaintiff did not have a pre-negotiated contract with Cigna, and Plaintiff was not part of Cigna's provider network. *Id.* ¶ 10. Following the transportation of Patient, Plaintiff billed Cigna $418,511 for the ground and air transportation services rendered based on its "usual and customary rate." *Id.* ¶ 7, 12. Cigna only made a partial payment of $2,003.44 for the ground transportation services. *Id.* ¶ 8.

In its Amended Complaint, Plaintiff asserts two counts: (1) Cigna allegedly acted with the intent to convert and obtain Plaintiff's services without paying for them in violation of Florida Statute § 772.11(1) and (2) quantum meruit. Dkt. 1-1.

In response, Defendant filed the instant motion to dismiss, arguing that: (1) both counts are preempted by the Airline Deregulation Act, and (2) Plaintiff's Amended Complaint fails to sustain a claim for relief due to fundamental defects. Dkt. 13 at 2.

## DISCUSSION

Based on a careful review of the pleadings, the Court grants Cigna's motion to dismiss the Amended Complaint. As discussed below, Jet ICU's theft of service

2

claim under Florida Statute § 772.11(1) is dismissed with prejudice, but the quantum meruit claim is dismissed without prejudice.

## I.    Standard of Review

Federal Rule of Civil Procedure 8(a)(2) requires a short and plain statement of the claim showing that the plaintiff is entitled to relief in order to give the defendant fair notice of the claims and grounds. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). The plaintiff is required to allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citation omitted).

In considering a motion to dismiss, the court must construe the facts in the light most favorable to the Plaintiff. *Wiersum v. U.S. Bank, N.A.*, 785 F.3d 483, 485 (11th Cir. 2015). A complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" to survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "A claim is facially plausible when the court can draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 662. The standard on a Federal Rule of Civil Procedure 12(b)(6) motion is not whether the plaintiff will ultimately prevail in his claims, but whether the allegations are sufficient to allow the case to proceed to discovery in an attempt to prove those

claims. *See Jackam v. Hospital Corp. of Am. Mideast, Ltd.*, 800 F.2d 1577, 1579 (11th Cir. 1986).

## II. Failure to State a Cause of Action

Defendant asserts Plaintiff failed to state any plausible cause of action for civil theft and quantum meruit. The Court finds Jet ICU has sufficiently alleged a cause of action for Counts I and II.

### a. Count I- Theft of Service under Florida Statute 772.11(1)

For the civil theft claim under Florida Statute 772.11(1), Defendant argues Jet ICU has failed to show that "Cigna knowingly obtained or used the Plaintiff's property" since it was Patient (not Cigna) who received Jet ICU's ground and ambulance services. Dkt. 13 at 9.

Under Florida law, a plaintiff can obtain "treble damages if he proves by clear and convincing evidence that he has been injured by the defendant's violation of Section 812.014, Florida Statutes – the criminal theft statute." *Omnipol, a.S. v. Worrell*, 421 F. Supp. 3d 1321, 1346 (M.D. Fla. 2019) (citing Fla. Stat. § 772.11(1)). In a civil theft claim, "the plaintiff must allege an injury resulting from a violation of the criminal theft statute." *Id.* Under Florida's criminal theft statute, the plaintiff must allege the defendant: "(1) knowingly (2) obtained or used, or endeavored to obtain or use, the plaintiff's property with (3) 'felonious intent' (4) either temporarily or permanently to . . . appropriate the property to the defendant's own

use or the use of another." *Id.*; *United States v. Bailey*, 288 F. Supp. 2d 1261, 1265 (M.D. Fla. 2003), *aff'd*, 419 F.3d 1208 (11th Cir. 2005).

Viewing the facts in the light most favorable to Plaintiff, the civil theft allegations made in the Amended Complaint cover the required elements. Jet ICU has sufficiently alleged that it sent Cigna the written pre-suit notice as required under Fla. Stat. § 772.11(1). Dkt.1-1 ¶ 16. Plaintiff also asserts it submitted a reimbursement claim, which indicates Cigna had "actual knowledge that the services had been rendered to its insured, Patient, to [Cigna's] benefit." *Id.* ¶ 19. Further, it alleges Cigna "acted with intent, or in reckless disregard, to convert and obtain Jet ICU's services," and the "intent to steal" is demonstrated by Cigna's partial payment for Jet ICU's ground transportation of Patient. *Id.* ¶ 21.

  b.  *Count II- Quantum Meruit*

The Court finds Jet ICU has sufficiently alleged a claim for quantum meruit.[1] A claim for quantum meruit requires a plaintiff to allege: "the plaintiff provided, and the defendant assented to and received, a benefit in the form of goods or services under circumstances where, in the ordinary course of common events, a reasonable person receiving such a benefit normally would expect to pay for it." *Paschen v.*

---

[1] As discussed in further detail below, Plaintiff's quantum meruit claim is preempted as pled since the Court cannot determine if it is alleging an implied-in-fact or an implied-in-law contract. But for purposes of resolving whether Plaintiff failed to state a cause of action for quantum meruit, the Court finds the Amended Complaint passes the low bar of FRCP 8(a).

*B&B Site Dev., Inc.*, 311 So. 3d 39, 48 (Fla. 4th DCA 2021) (quoting *W.R. Townsend Contracting, Inc. v. Jensen Civil Constr., Inc.*, 728 So. 2d 297, 305 (Fla. 1st DCA 1999)).

Here, Jet ICU sufficiently stated a cause of action for quantum meruit. The Amended Complaint alleges Jet ICU conferred a "significant economic benefit" upon Cigna by providing Cigna's insured member with emergent medical transportation to which Patient was entitled under its insurance plan. Dkt. 1-1 ¶¶ 26–28, 31. Further, it claims Cigna was "aware, or reasonably should have been aware," that Jet ICU was required to confer a benefit (i.e., air transportation services) upon Patient. *Id.* ¶ 29. Finally, Jet ICU alleges Cigna "knew or should have known" there was no pre-negotiated contract between the parties, so Jet ICU would charge its "reasonable, customary, and fair market value for the services." *Id.* ¶¶ 11, 30–33.

## III.   Preemption under the Airline Deregulation Act

Generally, an affirmative defense like federal preemption of state law will not be grounds to dismiss a complaint. *Quiller v. Barclays Am./Credit, Inc.*, 727 F.2d 1067, 1069 (11th Cir. 1984), *aff'd*, 764 F.2d 1400 (11th Cir. 1985). However, "a complaint may be dismissed under Rule 12(b)(6) when its own allegations indicate the existence of an affirmative defense." *Id.* Thus, a Rule 12(b)(6) dismissal is proper if "the defense clearly appears on the face of the complaint." *Id.*

Congress enacted the Airline Deregulation Act ("ADA") in 1978 to "promote 'efficiency, innovation, and low prices' in the airline industry through 'maximum reliance on competitive market forces and on actual and potential competition.'" *Northwest, Inc. v. Ginsberg*, 572 U.S. 273, 280 (2014) (quoting 49 U.S.C. §§ 40101(a)(6), (12)(A)). To prevent states from undoing the federal deregulation, the ADA has an express preemption provision that prohibits states from "enact[ing] or enforc[ing] a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation. . . ." *Id.* (quoting 49 U.S.C. § 41713(b)(1)). Thus, any state laws having a connection with or reference to airline "price, rates, routes, or services" are preempted. *See Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992). This Court must interpret the ADA's preemption provision broadly, encompassing "state enforcement actions having a connection with or reference to airline 'rates, routes, or services.'" *Morales*, 504 U.S. at 384 (quoting 49 U.S.C. § 1305(a)(1)). [2]

   a. *Plaintiff's Claim for Theft of Service Under Florida Statute § 772.11(1) is Preempted by the ADA*

The Court finds that Plaintiff's claim under Florida Statute § 772.11(1) is preempted by the ADA because (i) Jet ICU is an "air carrier" and (ii) Florida's

---

[2] Contrary to Plaintiff's argument that an "expansive interpretation of the ADA's preemption clause [is] unsupported by Congressional intent," Dkt. 14 at 3, the Supreme Court has held twice that courts must interpret the ADA's preemption provision broadly. *See Morales*, 504 U.S. at 383 (finding the language in the ADA expresses a "broad preemptive purpose"); *Ginsberg*, 572 U.S. at 281 ("We reaffirmed *Morales*' broad interpretation of the ADA preemption provision.").

civil theft statute is "related to a price" over which air carriers compete. The Court will address each point in turn.

    i.    Plaintiff is an "Air Carrier" for Purposes of the ADA

To determine if a claim under Florida Statute § 772.11(1) is preempted by the ADA, the Court must first ascertain whether Plaintiff is an "air carrier" under the ADA. *See* 49 U.S.C. § 41713(b)(1). The ADA defines an "air carrier" as "a citizen of the United States undertaking by any means, directly or indirectly, to provide air transportation." 49 U.S.C. § 40102(a)(2). "Air transportation" is defined as "foreign air transportation, interstate air transportation, or the transportation of mail by aircraft." 49 U.S.C. § 40102(a)(5).

Here, based on the plain language of the statute, Jet ICU is an "air carrier" under the ADA. Plaintiff's Amended Complaint admits it "provides air transport via fixed-wing aircraft" as a health care provider and rendered emergency air transportation to Patient on June 10, 2022. Dkt. 1-1 ¶¶ 2, 4–7. In other words, Jet ICU "directly" provided "interstate air transposition" when Patient was flown from St. Thomas to Tampa for medical treatment. *See* 49 U.S.C. § 40102(a)(2), (5).

Furthermore, courts have uniformly found that air ambulance providers are "air carriers" subject to the ADA. *See e.g., Air Evac Ems v. Sullivan*, 8 F.4th 346, 352 (5th Cir. 2021) ("Air ambulances transporting patients to hospitals fall squarely within that definition. Courts are agreed on this point."); *Air Evac EMS, Inc. v.*

*Cheatham*, 910 F.3d 751, 766 (4th Cir. 2018) ("[T]he ADA's preemption clause applies to the air ambulance industry."); *Schneberger v. Air Evac EMS, Inc.*, No. CIV-16-843-R, 2017 WL 1026012, at *2 (W.D. Okla. Mar. 15, 2017) ("Courts have all but uniformly held that air ambulance providers are 'air carriers' under the ADA."); *Bailey v. Rocky Mountain Holdings, LLC*, 889 F.3d 1259, 1266 n.13 (11th Cir. 2018); *Eaglemed Ltd. Liab. Co. v. Cox*, 868 F.3d 893, 904 (10th Cir. 2017); *Worldwide Aircraft Servs., Inc. v. United Healthcare Ins. Co.*, No. 818CV2549T24TGW, 2018 WL 6589838, at *2 (M.D. Fla. Dec. 14, 2018); *Stout v. Med-Trans Corp.*, 313 F. Supp. 3d 1289, 1295 (N.D. Fla. 2018); *Reva*, 2018 WL 1701969, at *5; *Med–Trans Corp. v. Benton*, 581 F.Supp.2d 721, 732 (E.D.N.C. 2008).

In response to Cigna's motion to dismiss, Jet ICU disputes that it is an "air carrier" under the ADA since it is not a commercial airline, and the Amended Complaint never alleges it is an airline. *See* Dkt. 14 at 4. Jet ICU further contends the "instant case only involves one air ambulance – not an airline and certainly not the airline industry with which Congress was concerned." *Id.*

While the Court must accept the facts in the Amended Complaint as true, Plaintiff's argument still misses the mark. The Supreme Court has made it clear a court must "begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose."

*Morales*, 504 U.S. at 383 (quotations and citations omitted). The text of 49 U.S.C. § 40102(a) plainly encompasses the emergency air transportation Jet ICU provided to Patient, and Plaintiff has failed to "present[] a single textual reason to support the argument that the broad language of the [ADA]'s express preemption provision should not include air-ambulance services." *Cox*, 868 F.3d at 904; *see also Bailey v. Rocky Mountain Holdings, LLC*, 889 F.3d 1259, 1268 (11th Cir. 2018) (quoting *Morales*, 504 U.S. at 384) (finding 49 U.S.C. § 41713(b)(1) "expresses a broad preemptive intent").

       ii.   <u>Florida Statute § 772.11(1) is Related to a Price of an Air Carrier under the ADA</u>

Since Plaintiff is an "air carrier" under the ADA, the next issue is whether the Florida Statute § 772.11(1) is "related to a price . . . of an air carrier." 49 U.S.C. § 41713(b)(1). A law "relate[s] to a price, route, or service" if it has "a connection with, or reference to" an air carrier's prices, routes, or services. *See Ginsberg*, 572 U.S. at 280 (citing *Morales*, 504 U.S. at 384). Because the phrase "related to" expresses a "broad pre-emptive purpose," "[s]tate enforcement actions having a connection with or reference to airline 'rates, routes, or services' are preempted" under the ADA. *Morales*, 504 U.S. at 383–84. Therefore, "[w]henever a state law has 'the forbidden significant effect' on the prices of an air carrier, the ADA preempts that law." *Bailey*, 889 F.3d at 1262 (quoting *Morales*, 504 U.S. at 388).

Here, Defendant's motion to dismiss argues Jet ICU is attempting to use a state enforcement action (i.e., Florida's civil theft statute) to dictate the reimbursement amount an air ambulance provider can receive. Dkt. 13 at 6. The Court agrees.

Florida Statute § 772.11(1) states in relevant part:

> Any person who proves by clear and convincing evidence that he or she has been injured in any fashion by reason of any violation of ss. 812.012-812.037 or s. 825.103(1) has a cause of action for *threefold the actual damages sustained* and, in any such action, is entitled to minimum damages in the amount of $200, and reasonable attorney's fees and court costs in the trial and appellate courts.

Fla. Stat. § 772.11(1) (emphasis added). To the extent that Florida Statute § 772.11(1) applies in this case, it is preempted because the statute directly increases the price that an insurer must pay for Jet ICU's air ambulance service. *See Worldwide Aircraft Servs.*, 2018 WL 6589838, at *6 (holding Florida Statute § 641.513(5) was preempted "because it directly specifies the price that an HMO insurer must pay for the plaintiff's air ambulance services").

Put another way, Florida Statute § 772.11(1) has a connection with or reference to Jet ICU's price since it affects the reimbursement amount Jet ICU can receive for air transportation. Indeed, Florida Statute § 772.11(1) would allow Jet ICU to receive "threefold the actual damages sustained" (in addition to reasonable attorney's fees and court costs) if it prevails in its civil theft suit. Fla. Stat. § 772.11(1). In doing so, the statute triples the amount Jet ICU could obtain from an

insurer for services it provides to a patient. Such an expansion—even if it benefits Jet ICU by increasing the amount it could be reimbursed—has a "forbidden significant effect" on Jet ICU's price. *See Bailey*, 889 F.3d at 1271 (holding the ADA preempted Florida Statute § 627.736 since it has a "forbidden significant effect" on the prices of an air ambulance by reducing the contract price for services rendered); *Air Evac EMS, Inc. v. Sullivan*, 331 F. Supp. 3d 650, 662–63 (W.D. Tx. 2018) (finding that a Texas workers compensation statute was preempted by the ADA since it restricted how much an air ambulance could receive for its services, which had "a forbidden significant effect on" the air carrier's prices).

However, Plaintiff contends the ADA does not preempt Florida Statute § 772.11(1) since preemption only applies when a state law affects the relationship between the airline and its customers, not other third-party relationships like contractor-subcontractor. Dkt. 14 at 6 (citing *Amerijet Intern., Inc. v. Miami-Dade Cnty., Fla.*, 627 Fed. App'x 744, 749–50 (11th Cir. 2015)). Thus, the "Jet ICU-Cigna relationship as provider and insurer-payor is a reimbursement dispute" which cannot support preemption. *Id.*

Plaintiff's reliance on *Amerijet* is misplaced. The *Amerijet* court only addressed whether Miami's living wage ordinance for cargo handlers was related to a "service" under the ADA, not the "price" charged by an air carrier. *Amerijet*, 627 Fed. App'x at 748–49. Specifically, *Amerijet*'s discussion concerning the "airline-

12

consumer" or "airline-end user relationship" only pertains to whether Miami's wage ordinance for airport workers met the ADA's elements of a preempted "service." *Id.* at 749. Thus, *Amerijet* has no application to the instant case. *See e.g.*, *Roman v. Spirit Airlines*, Inc., No. 19-CIV-61461-RAR, 2020 WL 255202, at *4–5 (S.D. Fla. Jan. 14, 2020) (conducting two separate and distinct analyses for "price" preemption and "service" preemption under the ADA).

### iii.   Congressional Intent and Preemption

Plaintiff also asserts Congress never intended to regulate the air ambulance market, only the consumer airline market. Dkt. 14 at 5. Even if Congress intended to deregulate the air ambulance market, Jet ICU contends its claims do not "alter or interfere with that market's operation." *Id.* at 6.

This Court declines Jet ICU's attempt to carve out an exception to the ADA's preemption provision. The Supreme Court has long held that courts "are not at liberty to create an exception where Congress has declined to do so." *Freytag v. C.I.R.*, 501 U.S. 868, 874 (1991) (quoting *Hallstrom v. Tillamook Cty.*, 493 U.S. 20, 27 (1989)). The ADA's legislative history demonstrates Congress intended to comprehensively preempt state regulation of interstate air transportation. *See Sullivan*, 331 F. Supp. 3d at 663 (reviewing the legislative history of the ADA to show air ambulances are covered by the ADA). Nor is this Court the first one to hold the ADA preempts state laws that relate to the air ambulance market. *See e.g., Bailey*,

889 F.3d at 1266–68; *Cheatham*, 910 F.3d at 764; *Cox*, 868 F.3d at 904; *Worldwide Aircraft Servs.*, 2018 WL 6589838, at *2; *Reva*, 2018 WL 1701969, at *7; *Schneberger*, 2017 WL 1026012, at *2; *Benton*, 581 F. Supp. 2d at 732. Conversely, Plaintiff's response fails to provide any case or legislative document to support its contention that Congress intended to exclude air ambulances from the ADA's reach.

Further, Plaintiff's assertion that the ADA's preemption provision was only intended to be used defensively by air carriers is also unavailing. *See* Dkt. 14 at 7. Plaintiff cites no cases indicating the ADA's preemption provision can only be asserted by air carriers, and the argument has previously been rejected by another district court. *See Reva*, 2018 WL 1701969, at *6. Moreover, prior cases have found the ADA can be used defensively to preempt state law claims brought by air carriers. *See e.g.*, *Worldwide Aircraft Servs.*, 2018 WL 6589838, at *2; *Reva*, 2018 WL 1701969, at *7.

Accordingly, the Court finds ADA preemption "clearly appears on the face of the complaint" and preempts Florida Statute § 772.11(1) from being used by Jet ICU to obtain reimbursement from Cigna. *Quiller*, 727 F.2d at 1069 (citations omitted). Because no such claim is amenable to be cured, Count I is dismissed with prejudice.

   b. *Plaintiff's Common-Law Claim of Quantum Meruit is Preempted by the ADA as pled*

Turning to Jet ICU's second count, the ADA has also preempted Plaintiff's quantum meruit claim as pled. The Supreme Court has already determined that the

ADA's preemption provision applies to state common law claims just as it applies to state statutes. *Ginsberg*, 572 U.S. at 281. State common-law rules are preempted because they are "provisions having the force and effect of law" like state statutes and regulations. *Id.* at 282, 286 (finding the implied covenant of good faith and fair dealing is a state-imposed obligation and thus preempted by the ADA).

However, the ADA's preemption of state-imposed regulations of air carriers does not prohibit "court enforcement of contract terms set by the parties themselves." *American Airlines v. Wolens*, 513 U.S. 219, 222 (1995). Put simply, "terms and conditions that air carriers offer, and which are accepted, are privately ordered obligations that can be enforced through a breach of contract claim, even if the claim relates to the air carrier's rates, routes, or services." *Worldwide Aircraft Servs.*, 2018 WL 6589838, at *2 (citing *Ginsberg*, 572 U.S. at 281); *Wolens*, 513 U.S. 232–33 (recognizing a breach-of-contract exception to ADA preemption).

Prior federal courts are split on whether a quantum meruit claim is an implied-in-fact contract or an implied-in-law contract. *Compare Toolltrend, Inc. v. CMT Utensili, SRL*, 198 F.3d 802, 806 (11th Cir. 1999) (stating that quantum meruit claims derive from contacts implied-in-fact), *with Reva*, 2018 WL 1701969, at *4 (stating that quantum meruit claims derive from contacts implied-in-law); *Posely*, 433 F. Supp. 2d at 1314 (same).

This distinction may be relevant since some district courts have found that implied-in-fact contracts are *not* preempted by the ADA. *See Med. Mut. of Ohio v. Air Evac EMS, Inc.*, 341 F. Supp. 3d 771, 783 (N.D. Ohio 2018) (finding the plaintiff's breach of implied-in-fact contract claim was not preempted by the ADA); *Wagner v. Summit Air Ambulance, LLC*, No. CR-17-57-BU-BMM, 2017 WL 4855391 (D. Mont. Oct. 26, 2017) (denying motion to dismiss since the plaintiff's implied-in-fact contract claim might not be preempted by the ADA); *Worldwide Aircraft Servs.*, 2018 WL 6589838, at *5 (giving the plaintiff leave to amend complaint since an implied-in-fact contract claim might not be preempted by the ADA). *But see Stout*, 313 F. Supp. 3d at 1298 (finding the plaintiffs' claim for breach of an implied-in-fact contract is preempted by the ADA).

On the other hand, courts have been unanimous in finding that implied-in-law contract claims are preempted by the ADA because they are inherently predicated on the lack of a contract and thus involve a state-imposed obligation. *See, e.g.*, *Byler v. Air Methods Corp.*, 823 F. App'x 356, 364 (6th Cir. 2020); *Scarlett v. Air Methods Corp.*, 922 F.3d 1053, 1065 (10th Cir. 2019); *Brown v. United Airlines, Inc.*, 720 F.3d 60, 69–71 (1st Cir. 2013); *Reva*, 2018 WL 1701969, at *6; *Worldwide Aircraft Servs.*, 2018 WL 6589838, at *5; *Med. Mut. of Ohio*, 341 F. Supp. 3d at 781. As such, the Court should consider whether Plaintiff's quantum meruit claim is an implied-in-fact or an implied-in-law contract for purposes of ADA preemption.

16

At least one Florida court has firmly stated that "the doctrine of quantum meruit [is] also called a contract implied-in-fact." *Paschen*, 311 So. 3d at 48 (citing *Commerce P'ship.*, 695 So. 2d at 385); *see also 14th & Heinberg, LLC v. Terhaar & Cronley Gen. Contractors, Inc.*, 43 So. 3d 877, 881 n.1 (Fla. 1st DCA 2010) ("A contract implied in law or quasi contract is to be distinguished from a contract implied in fact which permits recovery under the theory of quantum meruit."); *Rite-Way Painting & Plastering, Inc. v. Tetor*, 582 So. 2d 15, 17 (Fla. 2d DCA 1991) ("While contracts implied in fact, such as an action in quantum meruit, require the assent of the parties, contracts implied in law do not require such assent."); *Rhythm & Hues, LLC v. Nature's Lawn Care, Inc.*, 368 So. 3d 12, 15 (Fla. 4th DCA 2023) (discussing the differences between implied-in-fact and implied-in-law contracts). *But see Posely*, 433 F. Supp. 2d at 1314 ("A claim of quantum meruit is synonymous with a claim for a contract implied-in-law, as opposed to a contract implied in fact.").

Because recent Florida courts agree that a quantum meruit claim is a claim for a contract implied-in-law, the Court finds Count II is preempted as pled and gives Plaintiff leave to amend its complaint to specify whether it is bringing an implied-in-fact or an implied-in-law claim. *Worldwide Aircraft Servs., Inc. v. United Healthcare Ins. Co.* is instructive as to why Plaintiff's quantum meruit claim should be dismissed without prejudice.

In *Worldwide Aircraft Servs.*, the same Plaintiff as the instant case raised a quantum meruit claim against United Airlines for failing to reimburse Plaintiff for the emergency air transportation it provided to a patient. 2018 WL 6589838, at *2. The court found the common law claim was preempted by the ADA "as pled" because the complaint failed to "clearly allege that this is a claim for breach of a contract implied-in-fact, as opposed to a preempted claim for breach of a contract implied-in-law." *Id.* at *5. In making its decision, the court explained:

> Plaintiff must allege sufficient facts to show that Plaintiff and United entered into a contract as demonstrated by their conduct. This would be consistent with the Eleventh Circuit's interpretation of *Wolens*, in which the *Bailey* court stated: "[A]n air carrier may bring a state action to enforce the terms of a contract, whether express or implied, ... so long as the action concerns voluntary commitments and not state-imposed obligations." *Bailey v. Rocky Mountain Holdings*, LLC, 889 F.3d 1259, 1268 (11th Cir. 2018) (citing *Wolens*, 513 U.S. at 232–33).

> This means that Plaintiff will have to allege (and later ultimately prove) that based on Plaintiff and United's conduct, they entered into an implied-in-fact contract. Whether a reasonable price can be implied by law once an implied-in-fact contract is shown to exist is a difficult question in the context of the ADA, and there is sparse case law on the issue. For example, in Medical Mutual of Ohio, the court stated that "the possibility that a reasonable price term may be supplied for the contract implied-in-fact— if it is found to exist—does not affect whether the ADA preempts the breach of [implied] contract claim." *Medical Mutual of Ohio*, 2018 WL 4411695, at *8. If implying a reasonable price simply enforces the intent of the parties, then such is not preempted by the ADA. *See Stout*, 313 F. Supp.3d at 1295 (stating that "whether a contract claim is preempted depends on the extent to which the doctrine is employed to effectuate the public policies of the given state rather than to enforce the intent of the parties"). However, implying a reasonable price would contravene the ADA if an air carrier sues on an implied-in-fact contract to collect on a bill that charges in excess of what is found to be a reasonable price and

18

> the air carrier cannot produce evidence that the parties implicitly agreed
> to the billed rate.

*Id.* Additionally, the court did not want to leave Plaintiff "without a remedy" if it could prove an implied-in-fact contract existed between the parties. *Id.* This Court is not worried about Plaintiff being left without a remedy since the No Surprises Act provides Plaintiff with an adequate remedy to resolve the instant reimbursement dispute. *See* 42 U.S.C. § 300gg-112.

Here, Plaintiff's claim is not relying on an express contract or a "privately ordered obligation" Jet ICU and Cigna "voluntarily undertook." *Ginsberg*, 572 U.S. at 281. The claim therefore does not fall under the *Wolens* exception to ADA preemption. Indeed, Plaintiff's Amended complaint admits there was no "pre-negotiated contract with Cigna" at the time of the emergency air transportation. Dkt. 1-1 ¶ 10. However, the Amended Complaint does allege Cigna "knew or should have known that Jet ICU. . . would charge its usual and customary rate for services" at the "reasonable, customary, [and] fair market value." *Id.* at 11, 30–32. Like the court in *Worldwide Aircraft Servs.*, this Court finds Plaintiff is *attempting* to collect on an implied-in-fact contract for a reasonable price. Therefore, this specific quantum meruit claim might not be preempted by the ADA since "implying a reasonable price simply enforces the intent of the parties." *Worldwide Aircraft Servs.*, 2018 WL 6589838, at *5 (citing *Stout*, 313 F. Supp. 3d at 1295).

Despite this conclusion, Count II is still preempted as pled since Plaintiff has not clearly alleged whether it is making an implied-in-fact contract claim or a preempted implied-in-law claim. Plaintiff must allege sufficient facts to show that Cigna "assented" to the benefit given by Jet ICU as demonstrated by their conduct. *See Rhythm & Hues*, 368 So. 3d at 15 (quoting *Rite-Way Painting & Plastering, Inc. v. Tetor*, 582 So. 2d 15, 17 (Fla. 2d DCA 1991)) ("A key distinction between contracts implied in fact and contracts implied in law is that '[w]hile contracts implied in fact . . . require the assent of the parties, contracts implied in law do not require such assent.'").

## IV. The No Surprises Act Does Not Prevent the ADA's Preemption of Plaintiff's State Law Claims

Finally, Plaintiff argues the No Surprises Act ("NSA") 42 U.S.C. § 300gg-112 authorizes the use of state law to determine the amount owed in disputes between out-of-network providers and insurers. Dkt. 14 at 8. Plaintiff contends this Court must "harmonize" the NSA and ADA to allow Jet ICU to bring its state law claims. *Id.* However, Plaintiff fails to cite a single case holding the NSA bars the ADA's preemption of certain state laws.[3]

---

[3] This lack of legal support is unsurprising since Plaintiff is raising a totally novel argument. Neither of the parties' pleadings nor independent research has revealed any legal authority discussing the interaction between the NSA and the ADA's preemption provision.

In its reply, Cigna points to the text of the NSA and contends Plaintiff's state law claims of theft of service and quantum meruit are not the types of "specified state laws" that the NSA allows a provider to rely on for reimbursement. Dkt. 17 at 6. Instead, Plaintiff should have gone through the independent dispute resolution ("IDR") process outlined in the NSA if Jet ICU wanted to be reimbursed for its services. *Id.* For the reasons discussed below, the Court agrees with Cigna and finds the NSA does not prevent Plaintiff's state law claims from being preempted by the ADA.

During a medical emergency, there is little choice in how a patient will get to a hospital. In some cases, the patient receives expensive transportation from a provider—like an air ambulance—who is outside the patient's insurance network. When the bill comes due, the patient's insurance and out-of-network provider may not agree on a fair reimbursement for the cost of services. In 2020, Congress attempted to resolve this problem with the No Surprises Act, which created a uniform reimbursement process, including binding arbitration. *See* 42 U.S.C. § 300gg-111. As it pertains to air ambulances, one district court further explained:

> [NSA's] main purpose was to end surprise medical billing by ensuring that certain out-of-network providers—such as air ambulances—are treated the same as in-network providers. See § 300gg-112(a)(1). To this end, the NSA created a standardized process for the presentation and payment of air ambulance transport claims. § 300gg-112(a)(3). After receiving a bill from an air ambulance provider, the insurance company either makes or refuses to make an initial payment. *Id.* If the air ambulance

21

company disagrees with the insurance company's decision, it can initiate open negotiations. § 300gg-112(b)(1)(A).

If these negotiations fail, the dispute goes to Independent Dispute Resolution ("IDR") for "baseball style" arbitration. § 300gg-112(b)(1)(B). IDR entities must be qualified by the governing executive agency. § 300gg-111(c)(4). If the parties cannot agree to a specific IDR entity, one is randomly assigned to the case. *Id.* The parties submit their best offers to the IDR entity, which analyzes several factors to pick a winner. § 300gg-112(b)(5). . . . The IDR decision is binding "in the absence of a fraudulent claim or evidence of misrepresentation of facts" and "not . . . subject to judicial review. . ."

*Med-Trans Corp. v. Cap. Health Plan, Inc.*, 700 F. Supp. 3d 1076, 1079–80 (M.D. Fla. 2023), *appeal dismissed*, 2024 WL 3402119 (11th Cir. May 30, 2024).

However, some states have their own IDR processes to remedy "surprise" billing. The NSA has an exception that makes claims ineligible for the federal IDR when there is a "specified state law" that meets certain criteria regarding the provision of an alternative IDR process. 42 U.S.C. §§ 300gg-111(a)(3)(H)(i), 300gg-111(a)(3)(I). The NSA defines a "specified state law" as:

a State law that provides for a method for determining the total amount payable under such a plan, coverage, or issuer, respectively (to the extent such State law applies to such plan, coverage, or issuer, subject to section 1144 of Title 29) in the case of a participant, beneficiary, or enrollee covered under such plan or coverage and receiving such item or service from such a nonparticipating provider or nonparticipating emergency facility.

42 U.S.C. § 300gg-111(a)(3)(I). In states without a "specified state law," the out-of-network rate is either the amount agreed to by the insurer and the out-of-network

provider or an amount determined through the IDR process. *See* 42 U.S.C. § 300gg-111(a)(3)(K).

Here, Plaintiff's civil theft and quantum meruit claims plainly fall outside the "specified state laws" that the NSA allows insurers and providers to use instead of the federal IDR process. Quantum meruit is a common law rule, so it cannot possibly be a state-created method to resolve out-of-network rates between insurance companies and healthcare providers. As for Florida Statute § 772.11(1), the civil theft statute neither outlines a method for calculating healthcare reimbursement rates nor provides for a binding IDR process.

Moreover, the Court finds the NSA and ADA are already "harmonized." The comprehensive IDR process outlined in the NSA for air ambulances provides an adequate remedy for Plaintiff's preempted state law claims. *See* 42 U.S.C. § 300gg-112(a). 42 U.S.C. § 300gg-112, titled "Ending Surprise Air Ambulance Bills," specifically outlines an IDR process air ambulance providers and insurers can participate in to resolve reimbursement disputes. *Id.* § 300gg-112(b). Indeed, the facts of the instant case are a textbook example of the problem Congress is attempting to remedy with the NSA—an insurance company and out-of-network air ambulance provider disputing the reimbursement amount for services rendered. *See Med-Trans Corp.*, 700 F. Supp. 3d at 1079. As a matter of first impression, the Court

finds the NSA does not bar the ADA's preemption of Plaintiff's civil theft and quantum meruit claims.

## CONCLUSION

Accordingly, it is hereby **ORDERED** and **ADJUDGED** that:

1. The Motion to Dismiss, Dkt. 13, is **GRANTED.** Count I is **DISMISSED** with prejudice.

2. Plaintiff may file an amended complaint within 14 days in order to reassert Count II. The Court cautions Plaintiff that the NSA appears to address its likely remedy in light of the ADA's broad preemption. If Plaintiff fails to file an amended complaint within the specified period, the Court will close this case without further notice and enter judgment.

**DONE AND ORDERED** at Tampa, Florida, on September 16, 2024.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**